UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SEGUNDO SOTO-RIVERA,

        Plaintiff,                        DECISION & ORDER
                                                    17-cv-6675-JWF

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

## Preliminary Statement

Plaintiff Segundo Soto-Rivera ("plaintiff" or "Soto-Rivera") brings this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). See Compl. (Docket # 1). Presently before the Court are competing motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). See Docket ## 16, 18. For the reasons that follow, plaintiff's motion for judgment on the pleadings (Docket # 16) is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 18) is **denied**, and the case is remanded for further proceedings consistent with this Decision and Order.

## Background and Procedural History

Plaintiff filed his applications for DIB and SSI on November 12, 2013, alleging a disability beginning on June 12, 2013. Administrative Record ("AR"), Docket # 9, at 102-17. Plaintiff's applications were initially denied on February 6, 2014. AR at

1

109, 117. Plaintiff, his attorney, a translator, and vocational expert Patricia Oakes ("the VE") appeared before Administrative Law Judge Rosanne Dummer ("the ALJ") on December 4, 2015 for a video administrative hearing. AR at 74-101. The ALJ issued an unfavorable decision on April 11, 2016. AR at 24-45. Plaintiff timely filed a request for review by the Appeals Council, which was denied on August 5, 2017. AR at 1-9. Plaintiff commenced this action on September 28, 2017 (Docket # 1) and filed his motion for judgment on the pleadings on August 29, 2018 (Docket # 16). The Commissioner filed its motion for judgment on the pleadings on October 29, 2018 (Docket # 18) and Soto-Rivera replied on November 19, 2018 (Docket # 19).

## Discussion

For purposes of this Decision and Order, familiarity with the medical evidence, the ALJ's decision and the five-step sequential process the Commissioner uses to determine eligibility for disability benefits is presumed. Suffice it to say that at Step Three the ALJ found plaintiff to have the following severe impairments: bilateral shoulder impingement with pain, lumbar degenerative disc disease, and bursitis of the left and right elbows. AR at 27. No impairments met or equaled a listed impairment (AR at 29), and the ALJ's residual functional capacity assessment ("RFC") was, inter alia, that Soto-Rivera could perform unskilled light work; lift/carry 20 pounds occasionally and ten

pounds frequently; occasionally reach overhead bilaterally; frequently reach bilaterally in all other directions and frequently push or pull; sit, stand, and walk for six hours out of an eight-hour work day for two hours at a time; occasionally kneel, crouch, and crawl; and frequently climb stairs. AR at 30.

Plaintiff contends that the ALJ's decision finding plaintiff was not disabled is not supported by substantial evidence because the ALJ did not give good reasons for discounting the opinions of plaintiff's treating physician and instead chose to rely solely on the opinion of a non-treating, non-examining physician. Pl.'s Mem. of Law (Docket # 16-1), at 19. For the reasons that follow, I agree.

The Opinions of Plaintiff's Treating Physician: Dr. Scott G. Hartman, M.D. is plaintiff's long-time treating physician. He is Board Certified in Family Medicine. The record includes Dr. Hartman's treatment notes as well as several physical assessment forms he completed for the Monroe County Department of Human Services in order to assist with and opine on plaintiff's ability to engage in full-time competitive employment.

On December 2, 2014, Dr. Hartman completed a Monroe County Department of Human Services Physical Assessment for Determination of Employability. AR at 527-31. Dr. Hartman stated that he had treated plaintiff since 2011 and had seen him over ten times in the preceding year. AR at 528. Dr. Hartman noted that plaintiff

3

could only walk for one to two hours per day, stand for one to two hours per day, and sit for one to two hours per day. AR at 531. A second Assessment for Determination of Employability was done on November 23, 2015, with similar findings reported. See AR at 1030.

On November 10, 2015, Dr. Hartman completed a physical RFC questionnaire. AR at 516-19. Dr. Hartman indicated that plaintiff could sit and stand/walk for less than two hours out of an eight-hour work day and needed to be able to walk for ten minutes every ten minutes. AR at 518. Additionally, Dr. Hartman opined that plaintiff would require unscheduled breaks and would need to shift positions, from sitting, standing, or walking, at will. AR at 518. Dr. Hartman further opined that plaintiff could not use his hands, fingers, or arms to grasp, turn, twist, reach, or manipulate objects at all. AR at 519.

Plaintiff had x-rays of his lumbar spine taken by radiologist Dr. Brian Tan on October 14, 2015, and Dr. Hartman reviewed the results on October 15, 2015. AR at 691. Dr. Hartman received these results before completing the physical RFC questionnaire as well as the second Assessment for Determination of Employability and accounted for them in his assessments. See AR at 1030.

Family Nurse Practitioner ("FNP") Carolyn Braddock and Nurse Practitioner ("NP") Luis Berrios similarly opined that plaintiff was limited in his ability to work. On October 4, 2013, NP Berrios stated that plaintiff could not participate in activities except

4

treatment for six months. AR at 539. NP Berrios noted at the time that plaintiff had no evidence of limitations in walking, standing, or sitting, but was very limited to pushing, pulling, bending, and lifting/carrying for only one to two hours. AR at 541. On March 11, 2015, FNP Braddock opined that plaintiff was unable to participate in activities other than treatment for six months. AR at 534. Further, FNP Braddock noted that plaintiff was very limited in his ability to walk, sit, and stand, push, pull, bend, and lift/carry and should do no more than one to two hours of each per an eight-hour work day. AR at 536. Thus, the record contains substantial evidence from plaintiff's treating doctor and medical treatment sources indicating that plaintiff had substantial exertional limitations that would impact his ability to engage in competitive employment.

<u>The Treating Physician Rule:</u> Although the standard of review of an ALJ's decision is limited, there are certain legal principles and analytical standards that this Court is required to apply. One of them is the so called "treating physician rule."

Generally, a treating physician's opinion is given controlling weight when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case

record." 20 C.F.R. § 404.1527(c)(2).[1] Where, as here, an ALJ gives a treating physician opinion something less than "controlling weight,"

> the ALJ must explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist. After considering the above factors, the ALJ must comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion.

Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (internal citations, quotations, and alterations omitted).

Courts in this circuit have consistently held that an ALJ's decision must be remanded if the ALJ fails to provide good reasons for not giving the opinion of a claimant's treating physician controlling weight. Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999); see Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004)(per curiam) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians [sic] opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

An analytical standard related to the treating physician rule is the principle that in determining eligibility for benefits, the

---
[1] This rule was in effect at the time plaintiff's claims were filed.

Commissioner should generally not rely on the medical opinions of non-treating and non-examining medical sources. "Courts in the Second Circuit have observed that the medical opinion of a non-examining medical expert does not constitute substantial evidence and may not be accorded significant weight." Ciambra v. Colvin, No. 15-cv-3474 (SJF), 2017 WL 1323758, at *10 (E.D.N.Y. Mar. 27, 2017) (collecting cases) (internal quotations and alterations omitted); see Vargas v. Sullivan, 898 F.2d 293, 295 (2d Cir. 1990) ("The general rule is that the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability. The advisers' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant." (internal quotations omitted)).

The ALJ's decision here did not abide by either of these established principles and thus is not supported by substantial evidence. First, the ALJ gave Dr. Hartman's opinion "little to no weight." AR at 40. This is permissible so long as the ALJ follows established Second Circuit caselaw outlined above and then provides "good reasons" for not affording the treating physician's opinions controlling weight.

According to the ALJ, she rejected Dr. Hartman's opinions because they were "inconsistent with the overall record and with Dr. Hartman's own progress notes." AR at 40. This assessment of

7

Dr. Hartman's opinion is not consistent with a fair reading of the record, including Dr. Hartman's treatment notes. Indeed, Dr. Hartman's treatment notes recited repeated observations that plaintiff's subjective complaints of shoulder, elbow, and back pain were corroborated through objective medical exams and tests. AR at 623-24 (MRI showed moderate to severe tendopathy in shoulders and an interstitial tear in left shoulder); 627-28 (shoulder pain worsening); 630-31 (decreased range of motion in left shoulder and left elbow tender to palpation); 634 (shoulder pain/tendopathy and right shoulder impingement); 638-39 (bilateral shoulder pain); 642-44 (severely limited range of motion in right shoulder, left elbow tender, and diagnosing bursitis); 647-49 (recommending elbow brace); 676-78 (unclear why plaintiff's pain is so uncontrolled).

Dr. Hartman's observations were also corroborated by other medical evidence in the record. For example, consultative examiner Dr. Aharon Wolf diagnosed plaintiff with bilateral shoulder pain and low back pain, and opined that plaintiff had "moderate limitations for lifting and reaching overhead." AR at 503-04. FNP Braddock opined that plaintiff was very limited in all areas of functioning including walking, standing, sitting, pushing, pulling, and lifting/carrying. AR at 535-36. Opinions from nurse practitioners, although "not technically deemed 'acceptable medical sources' under [the] rules, are important and should be evaluated on key issues such as impairment severity and functional

8

effects, along with the other relevant evidence in the file." SSR 06-03P, 2006 WL 2329939, at *2 (SSA Aug. 9, 2006). Drs. Craig Betchart and Jeffrey Harp assessed that plaintiff had bilateral shoulder tendopathy in line with Dr. Hartman's assessment. AR at 673. MRIs taken by Dr. Tan for back pain showed degenerative changes, disc bulges, herniation, and an annular tear. AR at 690-91. There simply is not substantial evidence in the record to support the ALJ's conclusion that Dr. Hartman's opinions were either internally inconsistent or inconsistent with the record as a whole.[2]

The ALJ also rejected Dr. Hartman's opinions because they were inconsistent with the findings of Dr. Lee Fisher. This also does not constitute a good reason for not giving controlling weight to the findings and opinions of plaintiff's long-time treating doctor. Dr. Fisher has never met, interviewed, examined, or personally assessed plaintiff. Dr. Fischer was a non-treating, non-examining physician who looked at medical records supplied to him by the Commissioner. AR at 42. Despite the clear distinction

---

[2] Dr. Hartman's findings were also discounted by the ALJ because he "apparently relied quite heavily" on the symptoms reported to him by his patient. AR at 42. However, the Second Circuit has held that a patient's complaints or reports of his history are "an essential diagnostic tool." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003)). Where an ALJ rejects a treating physician's opinion for its supposed reliance on a claimant's subjective complaints and is "quite generic" and "does not specify the ALJ's reasoning with any detail," remand is warranted. Pilarski v. Comm'r of Soc. Sec., No. 13-CV-6385-FPG, 2014 WL 4923994, at *2-3 (W.D.N.Y. Sep. 30, 2014).

9

the law and regulations make between the opinions and findings of treating doctors and the opinions and findings of non-examining doctors, the ALJ gave "little or no weight" to the opinion of the treating doctor and "great weight" to the opinion of the doctor who never even met or examined the plaintiff.

On a record replete with competent medical opinions from sources who had a treating relationship with plaintiff, there was no reason to rely on a non-examining, non-treating medical expert. At the very least, the ALJ should have ordered a consultative medical examination if she felt that additional medical information was necessary to complete the record. Nozan v. Comm'r of Soc. Sec., No. CV-05-1948 (FB), 2006 WL 2927170, at *5 (E.D.N.Y. Oct. 11, 2006) ("Rather than recontacting Nazon's [sic] treating physicians . . . the ALJ decided, based on the incomplete record before him, to give greater weight to the testimony of medical expert Dr. Fechner. Thus, the ALJ did not apply the correct legal standard." (internal citations omitted)); see Cabassa v. Astrue, No. 11-CV-1449 (KAM), 2012 WL 2202951, at *10 (E.D.N.Y. June 13, 2012) ("[I]f an ALJ believes that a treating physician's opinion lacks support or is internally inconsistent, he may not discredit the opinion on this basis but must affirmatively seek out clarifying information from the doctor." (citing Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998))).

Further, while an ALJ is free to choose between properly submitted medical opinions, she may not substitute her own lay opinion for those of medical experts. Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998); see also Oatman v. Comm'r of Soc. Sec., No. 7:13-CV-595 (TJM/TWD), 2014 WL 4384986, at *6 (N.D.N.Y. Sept. 4, 2014) ("It is improper for the ALJ to make any sort of medical determination or to set her own expertise against that of the treating physician."). Here, the ALJ improperly discounted the opinion of Dr. Hartman based on the type and amount of treatment he recommended for plaintiff. See AR at 42 ("[T]he claimant's orthopedic treatment consisted only of physical therapy." (emphasis in original)); "Dr. Hartman, treating physician noted the claimant's orthopedic care (recommending only physical therapy) was appropriate though the claimant was unwilling to try more physical therapy." (emphasis added)).

An ALJ is not a medical doctor who is competent to decide whether a particular form of treatment is aggressive or minimal, significant or inconsequential. Thus, an ALJ's efforts to minimize a claim of disability because the claimant's treating doctor "only" recommended a particular type of treatment is improper unless there is evidence in the record to support the ALJ's characterization of the medical significance of the prescribed treatment. See Burgess, 537 F.3d at 129 ("Nor is the opinion of the treating physician to be discounted merely because he has recommended a conservative

treatment regimen."); Foxman v. Barnhart, 157 F. App'x 344, 347 (2d Cir. 2005) (holding that "the ALJ erred in questioning the validity of [the treating physician's] opinion based on his 'conservative' course of treatment."); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000) ("[T]he district court improperly characterized the fact that [the treating physician] recommended only conservative physical therapy . . . as substantial evidence that plaintiff was not physically disabled during the relevant period."); Ridge v. Berryhill, 294 F. Supp. 3d 33, 60 n.12 (E.D.N.Y. 2018) (finding that the ALJ's reliance on the "conservative nature of plaintiff's treatment" consisting of "only physical therapy" was "an insufficient basis for finding plaintiff was not disabled in light of the entire record."); Ganoe v. Comm'r of Soc. Sec., No. 5:14-CV-1396 (GTS/WBC), 2015 WL 9267442, at *4 (N.D.N.Y. Nov. 23, 2015), report and recommendation adopted sub nom. Ganoe v. Colvin, No. 5:14-CV-1396, 2015 WL 9274999 (N.D.N.Y. Dec. 18, 2015) ("[A]n ALJ cannot rely on a plaintiff's prescribed conservative treatment as substantial evidence to undermine the treating physician's opinion."); Moon v. Colvin, 139 F. Supp. 3d 1211, 1220 (D. Or. 2015) ("[T]he fact that treatment may be routine or conservative is not a basis for finding subjective symptom testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ believes are available."); Valet v. Astrue, No. 10-CV-3282 KAM, 2012 WL 194970, at *18-19

(E.D.N.Y. Jan. 23, 2012) (holding that it was error to discount treating physician's opinion regarding plaintiff's impairments because it was allegedly inconsistent with the conservative treatment physician had prescribed). By substituting her opinion for that of a medical expert in making inferences based on the plaintiff's recommended care, the ALJ committed error.

Finally, in rejecting the opinion of the treating physician the ALJ found that "the possibility always exists that a doctor or medical clinician may express an opinion in an effort to assist a patient with whom he or she sympathizes . . . ." AR at 42. This gratuitous finding is not only unsupported anywhere in this record, but also unfairly denigrates the entire medical profession. "Mere speculation of impropriety is not an adequate justification for discounting a treating physician's opinion." Rivera v. Berryhill, No. 17 Civ. 7177 (RWS), 2019 WL 692162, at *12 (S.D.N.Y. Jan. 28, 2019) (collecting cases).

## Conclusion

For all the foregoing reasons, plaintiff's motion for judgment on the pleadings (Docket # 16) is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 18) is **denied** and the case is remanded for further proceedings

consistent with this Decision and Order.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: June 28, 2019
       Rochester, NY